## TOWN OF PURVIS *v.* LAMAR COUNTY.

(Division B. Oct. 26, 1931.)

[137 So 323. 'No. 29531.]

A. Q. Broadus, of Purvis, for appellant.

J. T. Garraway, of Purvis, for appellant.

T. W. Davis and L. C. Bridges, both of Purvis, for appellee.

Griffith, J., delivered the opinion of the court.

During the year 1929 the county of Lamar, in the maintenance of its public roads, was operating under the provisions of chapter 172, Laws 1916, as amended, with each of the supervisors' districts as a separate road district. The town of Purvis is located wholly within supervisors' district No. 1 of said county, and the streets of the said town were worked and maintained at the expense of the municipal treasury. At the May, 1929, meeting of the board of supervisors the road funds on hand to the credit of supervisors' district No. 1 being found insufficient to maintain the roads of the district during the year, it was ordered that public notice be

given of the intention to borrow, for road maintenance purposes, the sum of eight thousand dollars on a negotiable short note. No objections having been filed, the board at its June, 1929, meeting by an order then entered borrowed the said sum, for said road maintenance purposes, from the Lamar County Bank on a note payable on February 15, 1930.

At the November, 1929, meeting of the board, a special levy of seven mills on all the property of the district was made for the purpose of paying said note. The amount of the taxes collected under said special levy on the property within the town of Purvis amounted to the total of two thousand four hundred forty-five dollars and seventy-eight cents. The town, acting under chapter 232, Laws 1920, and chapter 129, Laws 1928, seasonably demanded of the county that one-half of said sum be remitted to the municipal treasury for the benefit of the street department of said town, and the demand not having been met, the town made a formal claim therefor, which claim was rejected by the board of supervisors; whereupon the town filed its declaration against the county in the circuit court, setting forth fully all the facts and demanding judgment in the sum of one thousand two hundred twenty-two dollars and eighty-nine cents. The county demurred to the declaration, the demurrer was sustained, the suit was dismissed, and the town has appealed.

The principal contention of the county is that the said orders for the borrowing of said sum were without authority of law, in that by chapter 157, Laws 1928, amendatory of chapter 172, Laws 1916, the only permissible methods of raising money for roads administered under said chapters were by a computation tax, an ad valorem tax, an acreage tax, or by bond issue, and that the raising of money by a short note in anticipation of taxes is not one of the methods allowed within said road laws; that in consequence the levy made to

retire said note was void; and that the taxes paid under said levy were voluntary payments in which the town can have no legal interest.

Admitting, for the sake of the argument, that the borrowing of said money for road maintenance purposes was without authority of law, this would not aid the county in the present suit: In the first place, because the language of chapter 232, Laws 1920, under which the town makes its demands, is "that one-half of all ad valorem taxes collected by or for a county . . . on property within a municipality . . . for road purposes . . . . shall be paid over to . . . . said municipality." Section 1. It is admitted that the taxes were collected, and this is enough, for we cannot amend the law by judicial construction and write into it the additional requirement that the taxes shall have been legally collected. In the second place, if the transaction were illegal, the note in the hands of the bank was an illegal paper which the county had no lawful authority to pay, and the taxes collected for that purpose when it reached the county depository would have to remain there, so far as said note was concerned. And so remaining, the taxes so collected would be road funds, there being no fund to which they could be legitimately allocated other than the said road fund, since from the beginning to the end, the substance of the purpose or objective of the creation of this fund was in relation to the maintenance of roads.

The county also contends that the note in question is in its nature a bond and therefore comes within the exception contained in section 1, chapter 232, Laws 1920. The answer to this connection is that, with two exceptions, a valid road bond can be issued only after an election held. No election was held in this case, nor is there any fact here which brings the case within either of the two exceptions mentioned. It would not comport with the system and structure of our laws on this sub-

ject to characterize a short note, made in anticipation of taxes, as being a bond.

We do not decide whether the county could borrow for road maintenance purposes in anticipation of taxes. This important question has not been fully briefed in this case, and we prefer to pass that issue until some case shall arise where the argument is more definitely directed to the exact point. But, if we concede, for the purposes of this case, that the borrowing of the eight thousand dollars was a valid transaction, the result here must be the same. It has long been the definite purpose of the statutes on this subject that the municipalities which maintain their streets at their own expense shall have one-half the ad valorem county road taxes collected on the property within the municipality, and this policy was distinctly reaffirmed and strengthened in the enactment of chapter 129, Laws 1928, which was passed to meet the defects pointed out in Board of Sup'rs of Lauderdale County v. Meridian, 149 Miss. 139, 114 So. 803. If we should adjudicate here that the ad valorem taxes collected to pay a short note made for road purposes and in anticipation of the taxes for the current year would be thereby removed from the operation of chapter 232, Laws 1920, and chapter 129, Laws 1928, and the towns would be thereby deprived of their one-half of said taxes for the current year's road maintenance, then we would arm the board of supervisors with an administrative device by which they could evade and set aside the entire purpose and policy of the law in respect to the share of the towns in the current ad valorem road taxes. Statutes evidencing a fixed and long continued, consistent legislative policy and intent must not be so construed as to permit inferior administrative boards to resort to or avail of administrative devices which would operate to negative or set aside the said consistent and persistent legislative intent—and this without regard to the purposes of the administrative board in

the particular case. If we were to uphold the county's contentions here, all that the boards of supervisors would have to do to defeat the towns of their share of the current road maintenance taxes would be to omit to levy enough in the fall of one year to meet any part of the road maintenance expenses of the coming year, and as soon as the latter year has arrived then borrow the funds for the then current year, levy a special tax to pay the note or notes made therefor, and divide no road funds with the municipality. Moreover, there is the consideration that it is the general policy of our laws that current county expenses shall be paid from current funds, and that the credit system shall not be assimilated as a part of the administration of county affairs. To hold otherwise than we do here would be a distinct encouragement to road maintenance on credit.

We have not overlooked the case of Town of Waveland v. Hancock County, 110 Miss. 471, 70 So. 561, nor the course of reasoning adopted in that case which lead to the conclusion that taxes collected to pay road bonds were not collected as for funds to be expended on the roads. But we now direct attention to the fact that the very exception imported into the old statute by judicial interpretation in that case is expressly made an exception in the present statute, and we call attention to the rule that when a statute contains exceptions in express language, there is an admonition to the courts that the exceptions thus expressed are the only ones contemplated, and that further exceptions should not be ingrafted by construction unless the necessity therefor be inescapable or the propriety thereof be substantially incontrovertible.

Nor have we overlooked the persuasive argument made by the county that if a part of the tax money, specially levied to pay a short note made in anticipation of taxes, is to be diverted to the town treasury, there would not be enough to pay the note or notes, and that the board is restricted in its authority in the special levy to a levy

"sufficient to pay the amount borrowed." See sections 251, 252, Code 1930. If that were the only thing in the way, we think the quoted language is broad enough to cover the amount borrowed plus the amount that is to go to the town or towns, and that as a practical proposition the necessary calculations for the levy as thus aggregated can be as easily made as if the entire of the levy were to go to the notes. At any rate, as we have already said, we cannot consent that a dominant and long-continued legislative policy shall be nullified by administrative devices, or by an argument in regard to inconvenience.

Reversed and remanded.