586 So.2d 838 (1991)
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION
v.
PDN, INC.
No. 90-CC-1180.
Supreme Court of Mississippi.
September 25, 1991.
*839 Jan Garrick, Jackson, for appellant.
R. James Young, Jackson, John B. Dongieux, Vicksburg, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
PITTMAN, Justice, for the Court:
The Mississippi Employment Security Commission appeals from a trial court order reversing the final order of the Commission which levied an assessment of contributions against PDN, Inc., as an employer subject to the Mississippi employment security laws.

I.
PDN, Inc. (PDN), a Mississippi corporation, operates a medical placement service for nurses, nurses' aides, and sitters. In *840 1988, one of the nurses filed a claim for unemployment compensation benefits. The Commission ascertained that PDN was not a registered employer. It then made pertinent inquiry and subsequent determination that PDN was an employer liable for contributions under the provisions of the Mississippi Employment Security Law, Miss. Code Ann. § 71-5-11(I)(14) (1972).
PDN contested the determination and exhausted its administrative remedies. PDN, following the procedure of Miss. Code Ann. § 71-5-355 (1972) for appeal, petitioned for writ of certiorari in the Circuit Court of the First Judicial District of Hinds County. That court issued an order and obtained the record of the proceedings developed before the Commission. The sole issue presented in the trial court, and on appeal to this Court, is whether PDN is an employer within the meaning of the Mississippi Employment Security Law, Miss. Code Ann. § 71-5-1, et seq. (1972).
The evidence before the Commission is before us without objection and we state the facts disclosed by the record. The Commission hearing officer determined that an employer-employee relationship existed between PDN and the workers. The following findings of fact were made by the hearing officer and adopted by the Board of Review:
PDN, Inc., is a private duty medical service that obtains work for nurses, nurses' aides, and sitters at various hospitals, care facilities, and private homes. PDN collects an hourly fee for each hour that the nurse, aide, or sitter works, either directly from the client or from the nurse, aide, or sitter. The workers must have the normal licenses and qualifications of the field in which they work. Workers can be released by PDN and replaced with another. Should a worker accept an assignment and not appear, they are charged a penalty fee. The workers are free to refuse assignments. PDN's total income is derived from the services performed by the workers.

II.
An employee is defined by our Mississippi Employment Security Law as follows:
Services performed by an individual for wages shall be determined to be employment subject to this chapter unless and until it is shown to the satisfaction of the Commission that such individual has been and will continue to be free from control and direction over the performance of such services both under his contract of services and in fact; and the relation of employer and employee shall be determined in accordance with the principles of the common law governing the relation of master and servant.
Miss. Code Ann. § 71-5-11(I)(14) (1972).
In applying similar provisions, courts of other jurisdictions have placed the burden of proof upon the party seeking to show the worker was not an employee. See e.g. Larry's Post Company, Inc. v. Unemployment Ins. Div., Contributions Bureau, 238 Mont. 190, 777 P.2d 325 (1989). We approved and adopt this allocation of the burden of proof.
Our restricted standard of review for administrative appeals is well known. In the absence of fraud, an order from a Board of Review of the Employment Security Commission on the facts is conclusive in the lower court, if supported by substantial evidence. This Court and the circuit court is limited to the findings of the Board of Review. Willie B. Barnett v. Mississippi Employment Security Commission, 583 So.2d 193 (Miss. 1991); Mississippi Employment Sec. Com'n. v. Pulphus, 538 So.2d 770, 772 (Miss. 1989); Mississippi Employment Sec. Com'n. v. Sellers, 505 So.2d 281, 283 (Miss. 1987).
We have articulated the additional principle that employment security contribution assessments are an excise tax and, therefore, every doubt as to their application must be resolved in favor of the taxpayer and against the taxing power. Mozingo v. Mississippi Employment Security Commission, 224 Miss. 375, 80 So.2d 75, 79 (1955); Texas Co. v. Wheeless, 185 Miss. 799, 187 So. 880, 889 (1939).
The evidence adduced before the Commission consists, for the most part, of *841 testimony from witnesses produced by PDN. PDN introduced the contracts between it and the nurses as well as its contracts with the service recipients. The Commission's opinion is as follows:
In this case, it is the opinion of the Hearing Officer that the nurses, aides, and sitters, are employees and not independent contractors. The business of PDN, Inc. is the employment of nurses, aides, and sitters. The economic reality is that PDN negotiates the wages, pays the wages, and provides workmen's compensation insurance. In the minds of the public and the patients, PDN is the employer. The nurses look to PDN to place them on assignments. Workers are nothing more than employees who work under a master/servant relationship. The decision of Contributions and Status Department will therefore be affirmed.
The findings of the Commission have some support in the evidence. The vexed question, however, is whether the findings suffice to support the conclusion that an employer/employee relationship existed between PDN and the placed workers, and particularly so, when we resolve every doubt of the statute's application against the taxing power and in favor of the taxpayer.
The Commission's conclusion that "in the minds of the public and patients, PDN is the employer" is without factual foundation. No evidence was adduced to support such a finding. To the contrary, the uncontradicted testimony of PDN refutes such conclusion and the PDN/patient/client contracts indicate otherwise. These contracts provide:
(1) Nurse will use her own professional judgment in the work she performs;
(2) PDN does not have the right to discharge the nurse for any reason;
(3) The nurse is responsible for her income taxes, social security taxes, unemployment taxes, and worker's compensation insurance[1];
(4) The nurse provides her own malpractice insurance;
(5) Nurse will hold PDN harmless from any liability surrounding her work;
(6) The nurse provides her own transportation to and from the job site;
(7) Nurse is obligated to provide a qualified replacement in the event he/she cannot personally fulfill the assignment;
(8) PDN shall not supervise nurse in any manner;
(9) PDN will provide nurse with name of a prospective hospital or patient and nurse shall have the option but not the obligation of providing private duty nursing to such hospital or patient;
(10) A published rate schedule for professional service is available to nurse;
(11) Service recipient may pay nurse directly. Nurse agrees to pay PDN $2.00 per hour for all hours worked; and
(12) Nurse is responsible for his/her own collection of fees.
While the contracts of service are not conclusive of the issue, the contracts and facts of operation must be considered in determining the relationship of the parties. Mozingo v. Mississippi Employment Security Commission, supra. The uncontradicted proof shows:
(1) PDN provides worker's compensation insurance but the premiums are reimbursed by the worker;
(2) The original claimant, Ms. Waltz, considered herself an independent contractor and that she was "on her own;"
(3) The hours and times of employment for the nurses are determined and set by the service recipient and the treating doctor.
The factors to be considered in determining the employee/independent contractor issue are:
(1) The extent of control exercised over the details of the work;
*842 (2) Whether or not the one employed is engaged in a distinct occupation or business;
(3) The skill required in the particular occupation;
(4) Whether the employer supplies the tools and place of work for the person doing the work;
(5) The length of time for which the person is employed;
(6) The method of payment, whether by the time or by the job; and
(7) Whether or not the work is a part of the regular business of the employer. Mississippi Employment Security Commission v. Plumbing Wholesale Co., 219 Miss. 724, 69 So.2d 814 (1954).
The primary factor is the right to or degree of control. In Texas Co. v. Wheeless we stated:
[T]he test as to who is a servant is stated to be whether the service is rendered by one whose physical conduct, time and activities in the performance of his duties are controlled, or are subject to the right of control, by the alleged master under the contract of employment or hire.
187 So. at 886.
In considering the control factor, the Commission finding that "workers can be released by PDN and replaced with another" is without evidentiary support. The contracts and undisputed testimony show the service recipient has the exclusive right to discharge the nurse. While PDN may, pursuant to the client's request, convey the message of discharge to the nurse, the right for such action remains with the service recipient.
In examining the factors listed and normally considered to resolve the present issue, we find the record shows:
(1) PDN does not exercise control or supervision of the nurses' performance of the work details;
(2) The nurses are registered or certified for their occupation;
(3) The nurses are an independent profession regulated by statute;
(4) No tools or equipment are furnished by PDN;
(5) PDN does not have the right to discharge the nurses; and
(6) The nurses may be paid by the service recipient or PDN, a matter determined solely by the agreement of the nurse and recipient.
On the other hand, the record reveals that the business of PDN consists of arranging nursing services for others and the nurses are therefore an integral part of its business. These findings, while relevant, are not sufficient, standing alone, to create an employer/employee relationship. See Saxton v. L.A. Penn & Sons, Inc., 284 So.2d 521, 522 (Miss. 1973).
The fact that PDN furnishes worker's compensation insurance is also not determinative of the issue. Undisputed testimony related that the insurance is provided to comply with the requirements of corporate clients and the premiums are paid by the nurses. The contracts placed in evidence provide that the nurse shall be responsible for their own worker's compensation insurance not provided by the client.
Whether nurse placement services are subject to contributions as employees under our Employment Security Law has not been previously decided by this court. The case of David Gentile Nursing Service, P.C. v. Roberts, 65 N.Y.2d 622, 491 N.Y.S.2d 156, 480 N.E.2d 745 (1985), cited by the Commission as authority for sustaining their position, recites facts somewhat similar to this case. However, David Gentile differs on the control factor. In David Gentile, nurses could not secure their own replacements and clients were contractually forbidden to pay the nurses directly.
Likewise, the cases of In re Nurse Care Registry, 154 A.D.2d 804, 546 N.Y.S.2d 245 (1989), In re Whyte, 132 A.D.2d 758, 517 N.Y.S.2d 111 (1987) and In Re Holbrook Speech Service, 116 A.D.2d 863, 498 N.Y.S.2d 185 (1986), cited by the Commission, are distinguishable. In those cases, the workers were paid solely by the referral agency who billed and collected from the service recipient.
*843 In Avchen v. Kiddoo, 200 Cal. App.3d 532, 246 Cal. Rptr. 152 (1988), the court held that nursing referral service agencies were not intended by the legislature to be employers within the meaning of the California Act. In making its determination, the court relied partially on facts similar to those in this case.
In Robison v. Faine, 525 So.2d 903, 907 (Fla. Dist. Ct. App. 1987), the issue of employee/independent contractor was presented in a tort case filed against a nurse referral agency. The Florida court held the agency was not liable for the action of a nurse referred by the agency.
Letter rulings of the Internal Revenue Service placed in evidence by PDN bearing dates of March 10, 1989, March 3, 1989, December 8, 1988, and December 18, 1988, respectively, verify that firms in the business of providing nursing placement services do not exercise sufficient direction and control over the workers to establish an employer/employee relationship between the firm and the nurses. Although provisions of the Internal Revenue Code prevent use of letter rulings as precedent, the rulings are pertinent to show how the relationship in issue is considered by other taxing agencies.

III.
While we are unwilling to set an unyielding formula for all cases like this one, we do hold that careful scrutiny of the record, the findings, and opinion of the Commission, fail to support the conclusion that an employer/employee relationship exists between PDN and the workers. The record further shows that PDN met the burden of proof required by statute and case law. The learned trial judge was imminently correct in reversing the Commission order, and the order of the trial court is affirmed.
AFFIRMED
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
McRAE, J., dissents without separate written opinion.
BANKS, J., not participating.
NOTES
[1] The evidence shows that PDN pays the worker's compensation insurance for the nurses but is reimbursed by them for the premiums.